IN THE CIRCUIT COURT OF BENTON COUNTY, ARKANSAS
19TH WEST CIRCUIT DIVISION 4

<u>OKUMA V MCKEE FOODS CORPORATION</u>

04CV-23-3099

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

MCKEE FOODS CORPORATION
National Registered Agents Inc
124 WEST CAPITOL AVENUE
Suite 1900
Little Rock, AR  72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

George M. Rozzell, IV
323 W. Spring St.
Fayetteville, AR  72701

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

BRENDA DESHIELDS, CIRCUIT CLERK
CIRCUIT COURT OF BENTON COUNTY
102 NORTHEAST A STREET
BENTONVILLE, AR  72712

CLERK OF COURT

*Tom Barbour*

TOM BARBOUR, DC

Date: 11/08/2023

No. 04CV-23-3099 This summons is for MCKEE FOODS CORPORATION (name of Defendant).

## PROOF OF SERVICE

❑ On _____ [date] I personally delivered the summons and complaint to the defendant at _____ [place]; or

❑ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

❑ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

❑ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

❑ On _____ [date] at _____ [address], where the defendant maintains an office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____
[name and job description]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in a lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❑ I am the plaintiff or attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $_____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____        SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____        By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
Benton County Circuit Court
Brenda DeShields, Circuit Clerk
2023-Nov-08 13:05:29
04CV-23-3099
C19WD04 : 17 Pages

IN THE CIRCUIT COURT
OF BENTON COUNTY, ARKANSAS

**WYMAN OKUMA**

      Plaintiff,

v.                                    Case No. 04CV-2023-_____

**McKEE FOODS CORPORATION**

      **Defendant.**

### COMPLAINT

Wyman Okuma comes before this Court and for his Complaint against McKee Food Corporation states and alleges:

### INTRODUCTION

Wyman Okuma ("Plaintiff" or "Okuma") brings this action against McKee Foods Corporation ("Defendant" or "McKee") to remedy his retaliatory termination in violation of Title VII and the Arkansas Civil Rights act and discrimination based upon age in violation of the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. §621 *et seq.* ("ADEA"). He seeks back-pay, front pay, compensatory and punitive damages, liquidated damages, prejudgment and post-judgment interest, reasonable attorney's fees and expenses, equitable, and declaratory relief as requested herein, and injunctive relief; along with any and all other relief which he may be entitled as the victim of the acts stated herein.

### JURISDICTION

1. At all times described in this Complaint and relevant thereto, Plaintiff was duly employed by McKee – that is until he was no longer employed for the unlawful reasons set forth herein.

2. Okuma brings this action against McKee for all appropriate relief and damages suffered due to its violations of his rights under Title VII, the Arkansas Civil Rights Act ("ACRA"), and the ADEA.

1

3. Okuma also brings this action seeking a declaratory judgment that Ark. Code Ann. Section 16-123-107(c)(2) of ACRA is unconstitutional in violation of the Arkansas Constitution, Article 2 Section 13, and Article 5 Section 32.

4. McKee is a foreign for-profit corporation, with a plant in Gentry, Arkansas at which the Plaintiff worked. Its registered agent for service is National Registered Agents, Inc., 124 W Capitol Ave, Ste 1900 Little Rock, AR 72201.

5. Until his separation with McKee, Okuma was at all times relevant an Arkansas citizen employed by McKee.

6. Okuma filed a Charge of Discrimination, Charge No. 493-2023-00107, on October 21, 2022, based upon Age and Retaliation (protected activity – sex) with the Equal Employment Commission ("EEOC").

7. Pursuant to ACRA at Ark. Code. Ann. Section 16-123-107(c)(4), any action based on employment discrimination in violation of subdivision (a)(1) of this section shall be brought within one (1) year after the alleged employment discrimination occurred, or within ninety (90) days of receipt of a "Right to Sue" letter or a notice of "Determination" from the United States Equal Employment Opportunity Commission concerning the alleged unlawful employment practice, whichever is later.

8. The Plaintiff brings this action in light of the Right to Sue Letter he received from the Equal Employment Opportunity Commission, which was originally issued to him on August 10, 2023. The EEOC Charge and Right to Sue Letter are attached as Exhibit A.

9. This Court has subject matter jurisdiction pursuant to Ark. Code Ann. Section 16-123-101 *et. seq.* and has concurrent jurisdiction over the Plaintiff's federal claims in accordance with *Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820 (1990).

10. Venue is proper in this Court due to the events giving rise to this claim having taken place in this judicial district, and Defendant employed Plaintiff within this judicial district.

**STATEMENT OF FACTS**

11. Okuma was hired by McKee in May 1999 with his position at the time of termination being Environment Services Department Superintendent. He enjoyed an exemplary career with satisfactory evaluations.

12. In 2019 and early 2020, Okuma was subject to suspicious disciplinary procedures following his reporting to his supervisors that he, being in his 60s wished to continue working for several more years.

13. On July 8, 2020, he filed EEOC Charge No. 493-2020-01477.

14. Following that charge, McKee offered him a severance package which he refused, desiring to continue working several more years until retirement.

15. Also following that charge, McKee implemented an improvement plan and McKee supervisors apologized for the institution of the disciplinary actions against him.

16. He understood as time when on that such matters had been closed and would no longer be part of any disciplinary record or progressive discipline program.

17. On, Monday, March 21, 2022, Shannon Penate brought her concerns of discrimination and sexual harassment to Okuma.

18. Okuma asked Ms. Penate to put the details of her concerns into writing and to copy ESD's HR representative, Robin Barker. Ms. Penate then sent the following email as requested to Mr. Okuma with a copy to Ms. Barker.

******************************

From: Shannon Penate <Shannon.Penate@mckee.com>
Sent: Monday, March 21, 2022 7:13 PM
To: Wyman Okuma Wyman.Okuma@mckee.com
Cc: Robin Barker <Robin.Barker@mckee.com>
Subject: Employee RedactedSAE
Importance: High


Employee Redacted met with me at the beginning of the shift on 3/20/2022. Employee Redacted stated that she has been bothered by some mechanics for a while and it is getting to the point that it is mentally stressing her out. Employee Redacted mentioned that she hadn't said anything

3

before because she felt like she would be tattling. I asked Employee Redacted who the mechanics were and some examples of what they had said to her. Employee Redacted stated that Paul Cabral said to her one day in the shipping breakroom "Oh it's too bad that you're in here in the corner alone". Another mechanic Billy Jenkins has said to Employee Redacted as she was taking the trash cart out "Oh you're finally going to do your job!" Employee Redacted stated that Billy has accused her of not doing her job multiple times saying things such as, "I know you go to the Annex and just sit and look at your phone" and Oh you're not going to hide in the closet all day today?" Employee Redacted mentioned that when she was at the Annex, she was organizing the snack cake rack and had her back to Aaron Harrelson and RJ Straubing and she thought she heard one of the two say "Let's shoot her in back of the legs" and Employee Redacted ignored them and then heard one of the two say "Let's see if we can get her to turn around". Employee Redacted said she turned around and asked "Did you just say you were going to shoot me in the back of the legs?" Then Aaron Harrelson began asking her questions like Do you have fire arms at your house and do you sleep with a gun under your pillow? Employee Redacted stated that all of this made her feel uncomfortable and began thinking "are these two guys thinking of following me home?"

Employee Redacted called out today and I have to wonder if it's because of all of this going on.

Shannon Penate

Plant 3  2nd Shift

ESD Supervisor



555 McKee Dr. | Gentry, AR 72734

19. Okuma saw the email when he arrived at work and then proceeded to his 9:30 am meeting, believing that HR would initiate some form of action or investigation.

20. Yet after his meeting, Okuma had not heard from Ms. Barker.

21. Believing nothing had been done yet about the report (as he saw no response from Ms. Barker), Mr. Okuma forwarded the email to those who would need to know of the issue.

******************************

From: Wyman Okuma <Wyman.Okuma@mckee.com>
Sent: Tuesday, March 22, 2022 11:00 AM
To: Joe Kitterman <Joe.Kitterman@mckee.com>
Subject: FW: Employee RedactedSAE
Importance: High

4

FYI. Sorry I just saw Shannon copied Robin on this memo-

Wyman-

***********************

**From:** Wyman Okuma <Wyman.Okuma@mckee.com>
**Sent:** Tuesday, March 22, 2022 11:21 AM
**To:** Rudy Steiner <Rudy.Steiner@mckee.com>
**Subject:** FW: Employee RedactedSAE
**Importance:** High

FYI-

Wyman-

*******************************

**From:** Dallas Cheek <Dallas.Cheek@mckee.com>
Sent: Tuesday, March 22, 2022 1:42 PM
**To:** Wyman Okuma <Wyman.Okuma@mckee.com>; Ken Hill <Ken.Hill@mckee.com>
**Subject:** RE: Employee RedactedSAE

Wyman,

Talking with Ken over this email, I've asked Robin for guidance on how to approach RJ.

Thanks,

Dallas Cheek

**************************

**From:** Rudy Steiner <Rudy.Steiner@mckee.com>
Sent: Tuesday, March 22, 2022 3:10 PM
**To:** Jerry Benge <Jerry.Benge@mckee.com>; Michael Shields <Michael.D.Shields@mckee.com>
**Cc:** Wyman Okuma <Wyman.Okuma@mckee.com>; Robin Barker <Robin.Barker@mckee.com>
**Subject:** FW: Employee RedactedSAE
**Importance:** High

Jerry and I met with Paul and Billy. Robin Barker just met with me also. I think HR will be looking into this also.

Thanks,

Rudy

************************

**From:** Robin Barker <Robin.Barker@mckee.com>
Sent: Tuesday, March 22, 2022 2:04 PM

5

**To:** Shannon Penate <Shannon.Penate@mckee.com>; Wyman Okuma <Wyman.Okuma@mckee.com>
**Subject:** RE: Employee RedactedSAE

Shannon & Wyman,

Thanks for the good, detailed notes. I'll be investigating this, across department staff. Please don't forward this to any others, so we can keep this confidential as possible, and I'll coordinate with their leadership. I'll call you if I have some questions after talking with Christie, and others. Did she come in today?

Thanks,

Robin

22. At no time did anyone from HR express concern that Mr. Okuma had shared this information with those in managerial positions. Because Second Shift (those responsible for the harassment) clock in at 12:45, Mr. Okuma felt compelled to take action to ensure the harassment did not continue.

23. Okuma had initially called Joe Kitterman, Maintenance Supervisor, over one of the employees mentioned in Ms. Penate's writing.

24. He did not reach Kitterman by the phone, so he sent the memo from Ms. Penate to him and at that same time to the other employees' Supervisor and Superintendent (Dallas Cheek, Ken Hill and Rudy Steiner) mentioned in Ms. Penate's writing.

25. Okuma then called K. Hill and R. Steiner to inform them these actions must stop. Okuma took swift action to protect his employee from harassment as he believed was required.

26. At 2:04 Tuesday afternoon, Ms. Barker sent her email in response to the email's notes, and was thankful. Believing it was now in HR's hands, Mr. Okuma was of the impression that the matter would be properly handled.

27. Mr. Okuma then learned from Department Administrator, Laura Manney, that the female contract Staff Mark employee, Employee Redacted, quit her job on Wednesday 23, March 2022.

28. Seemingly no action (beyond his own) had been taken from HR to stop or protect the female employee from further verbal confrontation. As a result, she quit her employment.

6

******************************

**From:** Shannon Penate <Shannon.Penate@mckee.com>
Sent: Thursday, March 24, 2022 2:21 PM
To: Robin Barker <Robin.Barker@mckee.com>; Wyman Okuma <Wyman.Okuma@mckee.com>
**Subject:** RE: Employee RedactedSAE

I spoke with Employee Redacted on 3/22/2022 letting her know that this issue was being worked on. Employee Redacted mentioned more things about what was being done that made her feel uncomfortable while doing her job. Employee Redacted stated that it seemed like Paul Cabral and Billy Jenkins made it a point to be in the shipping breakroom when she was present and also showing up in MERA when she was completing tasks in that area.

***********************************

**From:** Laura Manney <Laura.Matney@mckee.com>
Sent: Thursday, March 24, 2022 2:22 PM
To: Wyman Okuma <Wyman.Okuma@mckee.com>; Shannon Penate <Shannon.Penate@mckee.com>; Robin Barker <Robin.Barker@mckee.com>
**Subject:** Employee Redacted

Wyman,

      I spoke to Christie Phifer at Staffmark about Employee Redacted. I asked her if Employee Redacted gave a reason for quitting, and she said that Employee Redacted told her that a maintenance man made her feel really uncomfortable. That he approached her in the shipping breakroom and made a comment about her being alone in the breakroom. She said the way he said it made her very uncomfortable and that she couldn't get out of there quickly enough. Employee Redacted told her that she comes from a very abusive background, and that it was just too much for her. She no longer felt comfortable working here. She actually told her that she is so shaken up by it, that at this time she didn't want her to find her another job, that she needed to take some time to herself for now.

*Thank you,*

*Laura Manney*

ESD Gentry

EXT 3234

********************

**From:** Robin Barker <Robin.Barker@mckee.com>
Sent: Thursday, March 24, 2022 4:45 PM
To: Wyman Okuma <Wyman.Okuma@mckee.com>
Cc: Melissa Smith <Melissa.Smith@mckee.com>
**Subject:** RE: Employee Redacted

Hello all,

7

> I've been in meetings and interviews today, until just now, and responded ASAP. After Shannon made us aware of this, I let you and Shannon both know that HR would be investigating this matter. Then, I started investigating and also spoke with Christie as part of my investigation and she will be sending me Employee Redacted's written statement.
>
> Christie told me that Employee Redacted had quit and also that Laura had called her earlier, asking for information regarding why Employee Redacted quit. I need a little time to talk to all parties, but please know, this is being taken seriously and looked into and we will take appropriate action, as indicated by the investigation.
>
> Thanks,
>
> Robin

29. After the employee quit, the attitude of McKee toward Mr. Okuma changed. He was made the target as to how he had handled the initial response. From March 22, 2022 on through the time of suspension Friday 20, May 2022, Okuma was questioned by Ms. Barker, Strickland, Greg J. Sutherland, Philp Cameron (Eng./Maintenance Manager) and others two different times asking for an explanation why he sent the memos on to Supervisors and Superintendents. Each time he responded that these inappropriate actions needed to stop immediately.

30. Mr. Barker told him that he did not handle this harassment correctly, *i.e.* he should not have forwarded the memo to others from Shannon Penate and tainted the investigation, by doing so broke Harassment Policy.

31. It is unclear which policy was broken.

32. HR Manager, Melissa Smith, echoed same words during a suspension meeting on Friday 20, May 2022.

33. In the pre-suspension committee meeting, HR Danny Hebert also echoed same words on Wednesday 25, May with A. Stricker present taking notes.

34. In the suspension committee meeting (Wednesday 1, June 2022), it was said by Brian Wilt, Production Manager, "that as a Superintendent [Mr. Okuma] did not recognize the

harassment and could not continue employment since [Mr. Okuma] could not recognize this case."

35. In the "4th" step" write up and in the committee meeting, it was said that Mr. Okuma broke policy but nowhere was the policy written to note what steps of policy he did not follow.

36. On Friday May 20, 2022, Mr. Okuma was asked to meet Greg J. Sutherland in Melissa Smith's office.

37. He was suspended at that time for not following HR procedures in harassment case by forwarding the memo to other supervisors and superintendents and that was not his job to do (that it was HR's role) and issued a step 4 suspension.

38. Mr. Okuma asked M. Smith about those previous 3 steps of discipline: "Greg Sutherland apologized for taking those actions in 2019 and 2020 and acknowledged that they were wrong and inappropriate. If they were wrong then what makes them right now?"

39. Smith said those items would be discussed in the Suspension Committee, but that for now, Okuma was suspended.

40. Per protocol, Sutherland walked him out and off the premises. As Sutherland walked Okuma through the turn style he said, "Sorry, we offered you the severance (referencing a 2020 offer following Okuma's prior EEOC charge) and you decided not take it." From that statement, Okuma knew his job was going to be eliminated.

41. Even still, Okuma had a pre-suspension meeting with Danny Hebert and Austin Stricker on Wednesday 25, May to discuss his entire discipline record and the event leading up to the suspension.

42. D. Hebert asked him about the previous 3 steps of discipline. Mr. Okuma tried to explain to Herbert that Sutherland had apologized for them and recognized they were incorrect (which all followed the prior EEOC charge).

43. At the hearing on June 1, 2022, Okuma's suspension was converted into termination.

9

44. Okuma subsequently applied for unemployment benefits, and the Arkansas Division of Workplace Services did not find misconduct related to his work. Okuma was approved for the benefits to which he was entitled.

## CAUSES OF ACTION
## COUNTS I & II– VIOLATION OF ARKANSAS CIVIL RIGHTS ACT AND TITLE VII - RETALIATION

45. Okuma incorporates and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

46. Okuma is a person entitled to protection from retaliation for his lawful good faith opposition to the unlawful employment practices being committed against an employee based on her sex under ACRA and the ADA.

47. By and because of the Defendants' retaliatory acts stated in the facts above, namely McKee's termination and discipline of him for communicating his employee's complaints, Plaintiff was subjected to a retaliatory adverse employment action and as such has suffered loss of pay, pecuniary damages, damages for emotional distress and anxiety and other associated fees and costs.

## COUNT III– VIOLATION OF ADEA - RETALIATION

48. Okuma incorporates and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

49. Okuma is a person entitled to protection from retaliation for his lawful good faith opposition to the unlawful employment practices related to his age.

50. In 2019 and 2020, Okuma was disciplined three times immediately preceding the filing of an age related EEOC charge. The contention was that the three steps of discipline were related to his age, which had become a factor to the point where his supervisor was asking when he planned to retire.

51. Okuma is over the age of 40 and was in his 60s at the time.

52. Following the opposition of the discipline by his EEOC charge, the discipline ceased and his supervisor apologized to him and informed him, upon completion of the improvement plan implemented, that the file would be closed.

53. In fact, though, the file was not "closed," and the three prior disciplines were used as an excuse to terminate Okuma in June 2022.

54. When he was walked out in 2022, he was told by his manager that he should have taken the severance offered in 2020 (following the age related complaints).

55. By and because of the Defendants' retaliatory acts stated in the facts above, namely McKee's reliance upon discipline related to his claims of age discrimination upon which to base his termination, Plaintiff was subjected to a retaliatory adverse employment action and as such has suffered loss of pay, pecuniary damages, damages for emotional distress and anxiety and other associated fees and costs.

## COUNT IV – DECLARATORY JUDGMENT
## AS TO THE CONSTITUTIONALITY OF ARK. CODE ANN. § 16-123-107(c)(2)

56. Okuma incorporates and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

57. In accordance with Arkansas's declaratory judgment statute, Ark. Code Ann. Section 16-111-101 *et. seq.*, Plaintiffs request the Court to issue a declaration that the damages limitations contained in the Arkansas Civil Rights Act, Ark. Code Ann. Section 16-123-107(c)(2), are unconstitutional.

58. The Arkansas Supreme Court has recognized that every act carries a strong presumption of constitutionality. *City of Cave Springs v. City of Rogers*, 343 Ark. 652, 658, 37. S.W.3d 607, 611 (2001). "An act will be struck down only when there is a clear incompatibility between the act and the constitution." *Id.* at 659, 37 S.W.3d at 611. "In construing a statute, [the Court] will presume that the General Assembly, in enacting it, possessed the full knowledge of the

11

constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law." *Robert D. Holloway, Inc. v. Pine Ridge Addition Residential Prop. Owners*, 332 Ark. 450, 453, 966 S.W.2d 241, 243 (1998). "Where the language is plain and unambiguous, [the Court] determines legislative intent from the ordinary meaning of the language used." *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, *5, 308 S.W.3d 135, 139.

59. Ark. Code Ann. Section 16-123-107(c)(2) clearly and unmistakably conflicts with Article 2, Section 13 of the Arkansas Constitution, which states: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase; completely, and without denial; promptly and without delay; conformably to the laws."

60. "The General Assembly does not have the power to override a constitutional provision." *Bd. of Trustees of Univ. of Arkansas v. Andrews*, 2018 Ark. 12, *11, 535 S.W.3d 616, 622.

61. Section 16-123-107(c)(2) is a clear attempt by the legislature to override Art. 2, Section 13 of the Arkansas Constitution by limiting the damages of persons suffering from employment discrimination and retaliation from receiving complete relief for the damages suffered therefrom.

62. Ark. Code Ann. Section 16-123-107(c)(2) is also incompatible with Article 5, Section 32 of the Arkansas Constitution. Under Art. 5, Section 32, the General Assembly is prohibited from enacting laws limiting the amount to be recovered by persons in non-worker's compensation cases and matters not involving torts between employees and employers. *See Bayer Crop Science LP v. Schafer*, 385 S.W.3d 822, 831 (Ark. 2011).

63. The Arkansas Constitution dictates that these damages proven in actions under the ARCA should not be limited, which would otherwise leave complaining parties without the means to obtain complete relief for violations thereof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a jury trial, judgment against Defendant reinstating him to his position and awarding all damages suffered by her in excess of $75,000.00 as required for federal diversity jurisdiction, punitive damages (if warranted and appropriate), costs of litigation including attorneys' fees; and other relief of which this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

/s/George M. Rozzell IV
George M. Rozzell IV, AR Bar No #2008032
Miller, Butler, Schneider, Pawlik, & Rozzell PLLC
323 W. Spring St., Fayetteville, AR 72701
p: 479-621-0006
f: 479-631-6890
grozzell@arkattorneys.com

Exhibit A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>EEOC | Agency(ies) Charge No(s):<br>493-2023-00107 |
|---|---|---|
| | | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Mr. Wyman L. Okuma | 479-601-5648 | 1954 |

Street Address

301 N. Nelson Ave.

GENTRY, AR 72734

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| MCKEE FOODS CORP & AFFILIATES | 101 - 200 Employees | |

Street Address

555 MCKEE DR

GENTRY, AR 72734

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address / City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest: 05/20/2022   Latest: 06/01/2022 |
| Age, Retaliation | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired on or about May 1999, with my most recent position being Environment Services Department Superintendent. On or about July 8, 2020, I filed an EEOC charge number 493-2020-01477. On or about March 21, 2022, my subordinate reported to me that an employee was being harassed based on her sex, female. I instructed the employee to email me the details and include human resources. On or about March 22, 2022, I forwarded the email sent by my subordinate to the supervisor of the departments involved, and later that day human resources replied to keep this confidential. On or about April 19, 2022, I was notified my actions of forwarding the email were under investigation for insubordination. On or about May 20, 2022, I was suspended and told I should have taken the severance package offered in 2020. On or about June 1, 2022, I was discharged. I was told by human resources that the issues in the email were under investigation and to not forward the email to keep it confidential. I was told by human resources that an investigation as started for me forwarding the email and I was questioned as to why I would forward it. Human Resources told me I was being suspended and given a step 4. I was told I was taken to a step 4 because of they were holding me to the steps received in 2019 and 2020. I was told by my manager when he walked me out that I should have taken the severance package he offered in 2020. I was told by the termination committee that I was discharged for forwarding the email after I was told to keep it confidential. I believe I was suspended and discharged in

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>Digitally Signed By: Mr. Wyman L. Okuma<br>10/21/2022<br><br>Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 5 (11/09)

|  | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| **CHARGE OF DISCRIMINATION**<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 493-2023-00107 |

| | and EEOC |
|---|---|
| *State or local Agency, if any* | |

retaliation for intervening to protect others in violation of Title VII of the Civil Rights Act of 1964, as amended, and suspended and discharged in retaliation for my previous EEOC charge, 493-2020-01477, and due to my age, 65, in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Mr. Wyman L. Okuma**<br>10/21/2022<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Little Rock Area Office
820 Louisiana St, Suite 200
Little Rock, AR 72201
(501) 900-6130
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/10/2023

To: Mr. Wyman L. Okuma
301 N. Nelson Ave.
GENTRY, AR 72734
Charge No: 493-2023-00107

EEOC Representative and email:   JEROME NUNLEY
Federal Investigator
jerome.nunley@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 493-2023-00107.

On behalf of the Commission,

Digitally Signed By: Edmond Sims
08/10/2023
Edmond Sims
Acting District Director

Cc:
Robin Rice
McKee Foods Corporation
PO Box 750
Collegedale, TN 37315

Melissa Smith
Mckee Food Corp
555 MCKEE DR
Gentry, AR 72734

Justin Furrow
Chambliss, Bahner & Stophel, P.C.
605 CHESTNUT ST STE 1700
Chattanooga, TN 37450

George Rozzell
Miller, Butler, Schneider, Pawlik, and Rozzell, PLLC
323 W. Spring St.
Fayetteville, AR 72701

Please retain this notice for your records.